

# HELEN F. DALTON & ASSOCIATES, P.C.
### ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

April 5, 2021

**Via ECF**
The Honorable Judge Steven Tiscione
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re: **Olivares v. Kemper Sports Management, Inc., et al.**
           **20-CV-1339 (ST)**

Dear Judge Tiscione:

      Our office represents Thomas Olivares ("Plaintiff" or "Olivares") in the above-captioned action and and we submit this motion jointly with counsel for Kemper Sports Management, Inc., Dana Cancellaro, Ben Barragan, and the Incorporated Village of Sands Points (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached after a months-long negotiation process between the parties.

    **I.**    **Settlement Terms**

      The parties reached a settlement to resolve all claims asserted in this matter for $25,000.00, including attorneys' fees (which are addressed below).

    **II.**    **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

    **a.**  **Plaintiff's Position**

      Plaintiff was employed by Defendants as a restaurant worker and food server from in or around March 2014 until in or around September 2018. Plaintiff brought this action alleging that he was not paid proper overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Plaintiff also alleged that he was entitled to spread of hours compensation and statutory penalties under the NYLL.

      Plaintiff alleged that he regularly worked forty-five (45) hours per week, including three twelve (12) hour shifts per week. Plaintiff further alleged that he was paid a regular hourly rate for

all hours worked and was not compensated with an extra hour at the minimum wage when he worked in excess of ten (10) hours per day.

Defendants produced time and pay records prior to the parties' settlement negotiations, which Plaintiff carefully reviewed. Although Plaintiff raised certain issues regarding these records, he understood the potential probative value of these records. Plaintiff preferred a certain outcome by which he would receive a lump settlement payment in the near future rather than protracted litigation and the uncertainty of a trial at a much later.

### b. Defendants' Position

At this time, Defendants contend that Plaintiff was properly paid straight time and overtime pay and, therefore, Defendants deny that Defendants violated the FLSA or NYLL.  Defendants understand that Plaintiff has also raised alleged issues regarding the spread of hours and wage notice violations, which Defendants dispute as well.  Nevertheless, Defendants are cognizant of the risks and costs inherent with proceeding with further litigation and believe that the settlement provides Plaintiff more than he could recover at trial.  Defendants note that the settlement does not include any discount for the myriad legal and factual issues that Defendants contend are fatal to Plaintiff's claims.  Accordingly, Defendants believe that a settlement of $25,000.00 is fair and reasonable in order to resolve all of the claims in this matter.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted).

The parties have agreed to settle all claims asserted in this matter for $25,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter and the risks and costs both sides faced with continued litigation. The parties had genuine, bona fide disputes over the number of hours worked by Plaintiff and the wages paid to Plaintiff, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement.

### III.  The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp.

3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 1 of the Settlement Agreement ("Release") is narrowly-tailored to claims "which were alleged in the Complaint filed in the above referenced action, specifically including [FLSA], [NYLL] and New York Comp Codes R. Regs, and its associated regulations concerning unpaid wages, minimum wages, overtime wages, record-keeping violations and failure to provide wage statements, which Plaintiff now has or has ever had." The Release does not raise any concerns regarding unequal bargaining power between Plaintiff and Defendants and the Release is not overbroad such that there is a concern that Plaintiff is releasing any and all possible claims against Defendants, including unknown claims and claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiff from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are fair and reasonable and comport with the standards articulated in *Cheeks*.

### IV.     Plaintiff's Recovery and Requested Attorneys' Fees

The parties agreed to settle all claims asserted in this matter for $25,000.00 in one payment 30 days from Court approval.

Plaintiff will recover $16,188.67 after attorneys' fees and expenses pursuant to the Agreement and in accordance with his retainer agreement with Plaintiff's counsel. Plaintiff's counsel respectfully requests one-third of the net settlement amount (after expenses have been deducted), consistent with the fee arrangement regularly approved by this Court.

Additionally, Plaintiff's counsel respectfully requests reimbursement of $717.00, for identifiable expenses, which include the Eastern District of New York filing fee ($400.00) and the costs of serving Defendants through their process server, PM Legal, LLC ($317.00).

Therefore, the total amount to be paid to Plaintiff's counsel, including reimbursement of expenses, is $8,811.33.

**Settlement Amount:** $25,000.00
**Attorneys' Expenses:** $717.00
**Settlement less Expenses:** $24,283.00
**Requested Attorneys' Fees:** $8,094.33 ($24,283.00 / 3)
**Total payable to Attorneys:** $8,811.33 ($8,094.33 + $717.00)
**Total payable to Plaintiff:** $16,188.67

Plaintiff's counsel and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their client throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs. As a check on Plaintiff's requested contingency fee, we provide Plaintiff's counsel's contemporaneous time records, lodestar calculation and qualifications attached hereto as **Exhibit 2**.

### V.     Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of arms-length negotiations and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Agreement. We thank Your Honor for his consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.
*Attorneys for Plaintiff*